**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

| | |
|---|---|
| **JACQUELINE E. STANFORD; and ROY STANFORD, SR.** | **PLAINTIFFS** |
| **V.** | **NO. 4:18-CV-96-DMB-JMV** |
| **LIBERTY MUTUAL GROUP INC., a/k/a Liberty Mutual Insurance; WARD J. SIMPSON; and JOHN DOE** | **DEFENDANTS** |

**ORDER**

On February 11, 2019, Liberty Mutual Group, Inc., a/k/a Liberty Mutual Insurance, filed "Defendant's Motion to Bifurcate and Sever, to Stay Extra-Contractual Claims, and to Prohibit Insurance Reference at Car Wreck Trial." Doc. #41. Liberty Mutual asks that (1) the bad faith claims brought by Jacqueline Stanford and Roy Stanford be bifurcated and severed from their underlying uninsured motorist claims; (2) the bad faith claims be stayed pending resolution of the underlying uninsured motorist claims; and (3) the issue of insurance coverage be excluded from trial. *See* Doc. #42. The Stanfords did not respond to the motion.

**I**
**Bifurcation and Severance**

Pursuant to Federal Rule of Civil Procedure 21, a "court may … sever any claim against a party."[1] Rule 42(b) authorizes a court to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." "The procedure authorized by Rule 42(b) should be distinguished from severance under Rule 21. Separate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment

---

[1] Bifurcation and severance are governed by federal law. *See Hardesty Builders, Inc. v. Mid-Continent Cas. Co.*, No. C-10-142, 2010 WL 2787810, at *2 (S.D. Tex. July 14, 2010) (collecting authorities).

1

entered thereon, independently." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 n.19 (5th Cir. 1993). Accordingly, if this Court were to sever the claims, bifurcation would be unnecessary.

### A. Severance

Rule 21 provides district courts with discretion to sever claims. A district court may exercise this discretion if an action "is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995). In applying this discretion, district courts in the Fifth Circuit "have settled on a standard which accords with that used in other circuits." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014). Under such standard, courts consider five factors:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Id.*

The first factor is analyzed under the "logical relationship test," which asks whether the claims at issue share an aggregate of operative facts. *Cooper v. Meritor, Inc.*, No. 4:16-cv-52, 2018 WL 1934065, at *2–3 (N.D. Miss. Apr. 24, 2018). Operative facts are "those relating directly to the claims in an action." *Id.* (alterations omitted).

Under Mississippi law, an uninsured (or underinsured) motorist claim requires that the plaintiff show he is covered by an uninsured policy and that he is "legally entitled to recover … damages" against the owner or operator of an uninsured vehicle. *See Wachtler v. State Farm Mut. Auto. Ins. Co.*, 835 So. 2d 23, 26 (Miss. 2003). A bad faith claim, in contrast, requires the plaintiff to show that an "insurer lacked an arguable or legitimate basis for denying [a] claim, or that the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the

2

insured's rights." *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003). However, "[a]n insured seeking to recover on a claim of bad faith must first establish the existence of coverage on the underlying claim." *Stubbs v. Miss. Farm Bureau Cas. Ins.*, 825 So.2d 8, 13 (Miss. 2002).

To the extent the bad faith claim depends on showing an underlying entitlement to benefits, there is indisputably an overlap in operative facts. However, because the crux of a bad faith claim depends on how an insured acted, as opposed to the facts of the underlying accident (the central focus of the uninsured motorist claim), the Court concludes that the two claims do not share an *aggregate* of operative facts. Accordingly, the first factor weighs in favor of severance, while the second factor does not.

As to the third factor, to the extent the bad faith claim depends on the plaintiffs prevailing on their uninsured motorist claim, the Court concludes that separating the claims would advance the interest of judicial economy because resolution of the uninsured motorist claim in favor of Liberty Mutual would obviate the need for discovery and trial on the bad faith claim. *See Mason v. State Farm Mut. Auto. Ins. Co.*, No. 5:19-cv-2, 2019 WL 1767558, at *2 (E.D. Ky. Apr. 22, 2019) ("To allow discovery to proceed on bad faith claims that are dependent on the underlying contractual claim goes against judicial economy by requiring the Parties to expend countless hours and resources on claims that may ultimately be unnecessary.").[2]

With regard to the fourth factor, Liberty Mutual argues it would be prejudiced in the absence of severance because a single trial, even if bifurcated into phases, would create confusion and prejudice with the jury members; and because litigating the bad faith claim alongside the

---

[2] *Mason* involved a motion for bifurcation, rather than severance. However, the same reasoning regarding efficiency applies to this case.

uninsured motorist claim would force it to disclose "certain privileged items relating to the analysis, evaluation, and investigation of UM claims." Doc. #42 at 12.

As discussed below, Liberty Mutual's concerns regarding a joint trial may be alleviated by bifurcation, rather than severance. As to Liberty Mutual's discovery concerns, the Court notes that discovery has closed without any discovery disputes. Accordingly, the Court finds no potential prejudice from overlapping discovery. Thus, the fourth factor weighs against of severance.

Finally, Liberty Mutual represents that for the bad faith trial, it "will likely call one or more employees as witnesses to explain its actions and may call experts on that issue as well. None of this evidence will be offered in the car wreck trial." Doc. #42 at 6. Because the bad faith claim will involve presentation of documents and evidence tied to the insurance claims process— evidence which is unrelated to the uninsured motorist claim—the fifth factor weighs in favor of severance.

While a close call, the Court finds that under these circumstances the relevant factors do not justify severance under Rule 21. Accordingly, the motion to sever will be denied.

### B. Bifurcation

A court considering a motion to bifurcate under Rule 42 involves the consideration of five factors:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the posture of discovery as to the respective claims suggests that they should not be tried jointly; (3) whether the claims present common questions of fact or law; (4) whether the claims will require testimony of different witnesses and documentary proof; and (5) the prejudice to either party in the event separate trials are ordered.

*Howell v. Imperial Palace*, No. 1:09-cv-7, 2010 WL 122239, at *2 (S.D. Miss. Jan 6, 2010).

4

For the reasons above, the Court concludes that the first and fourth factors weigh in favor of bifurcation but that the third does not. And, because nothing in the posture of discovery suggests that the claims should not be tried jointly, the second factor weighs against bifurcation.

With regard to prejudice, Liberty Mutual argues:

> The problem of adjudicating the claims in one trial will manifest itself immediately at trial. As will be discussed in more detail below, under *Heflin*, Liberty has a right to adjudicate the tort claim without disclosing that Liberty is even a party, much less that Plaintiffs have alleged bad faith. Therefore, voir dire will be limited to an examination of potential jurors to hear a personal injury case. However, there may be persons in the venire who have had an insurance claim and who potentially could be stricken for cause in the bad faith case against Liberty. If the bad faith claim is to be tried before the same jury, Liberty cannot properly voir dire the potential jurors on issues relevant to hearing a bad faith claim against an insurance company without waiving its right to keep evidence of insurance away from the jury in the car wreck case. This is unfairly prejudicial to Liberty and a violation of its fundamental right to due process. Some jurors, who may be properly accepted for the car wreck case, may have prejudices that would prevent them from serving as a juror in the bad faith case against Liberty. But we would never know, unless Liberty waives its right to adjudicate the car wreck case without any reference to insurance. Furthermore, it would be premature, improper, and confusing to voir dire the car wreck jury on bad faith issues in the first phase of the trial.

Doc. #42 at 6. Liberty Mutual also contends that a phased trial would prejudice it because "[t]he jury, after reaching its initial verdict, would believe its job to be done and would surely be frustrated to learn it has to sit through a second phase involving entirely different issues." *Id*. at 7.

The Court does not believe that a phased jury trial would frustrate jurors or that, even if it did, such frustration would be directed at Liberty Mutual. Furthermore, as explained below, the Court does not believe that hiding the nature of insurance at issue in this case would prejudice Liberty Mutual. Accordingly, Liberty Mutual's concerns regarding voir dire are meritless. However, there can be no serious dispute "that evidence relating to the bad faith claim may taint the [underinsured motorist] claim." *Phillips v. USAA Cas. Ins. Co.*, 2017 WL 3616419, at *2 (E.D. Wash. Mar. 3, 2017). Thus, a joint trial on all claims would likely prejudice Liberty Mutual. *Id*.

5

Upon consideration, the Court concludes that the relevant factors weigh in favor of bifurcating the bad faith and uninsured motorist claims into separate phases of the same trial. Liberty Mutual's motion will be granted to the extent it seeks bifurcation of the claims but will be denied to the extent it seeks completely separate trials.

## II
## Motion to Stay

Liberty Mutual also asks that the bad faith claims be stayed pending resolution of the uninsured motorist claims.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–55. A "stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Id.* at 257.

When considering whether to stay a matter pending resolution of a separate action, the Fifth Circuit has considered (1) the potential prejudice to the moving party if a stay is denied; (2) the potential prejudice to the non-moving party if a stay is granted; and (3) other "difficulties inherent in the general situation, including potential judicial inefficiency …." *Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545–46 (5th Cir. 1983). If these factors justify a stay, the "court must carefully consider the time reasonably expected for resolution of the other case." *Maples v. Donzinger*, No. 13-223, 2014 WL 688965, at *3 (E.D. La. Feb. 21, 2014) (quoting *Wedgeworth*, 706 F.2d at 545).

Liberty Mutual represents that it would be prejudiced by litigating the bad faith and uninsured motorist claims simultaneously because "certain privileged items relating to the analysis, evaluation, and investigation of the UM claims" would be discoverable in the bad faith action, but privileged in the underlying uninsured motorist claim. Doc. #42 at 12. As explained above, because discovery is closed, this concern for prejudice is unavailing. Furthermore, the Court concludes that concerns regarding efficiency may be alleviated by a bifurcated trial. Accordingly, because the relevant factors weigh against a stay, the motion to stay will be denied.

## III
## References to Liberty Mutual as Party or Insurer

Liberty Mutual argues that, assuming the uninsured motorist claim is bifurcated by phase or trial, evidence of the uninsured motorist coverage would cause prejudice and that the court should "order that during the trial of the car wreck case, the jury should not be informed that Liberty is a party or hear any reference to insurance." Doc. #42 at 17. Thus, Liberty Mutual argues it and its attorneys should be referred to as "Mr. Simpson," "The Defense," "the interests of Mr. Simpson," "or such other similar nomenclature as the Court deems appropriate …." *Id*. at 17–18.

Liberty Mutual has offered no federal authority which would justify its proposed procedure. This is unsurprising because it appears the only two federal courts to consider similar requests have declined such relief. *See Smith v. Summers*, 334 F. Supp. 3d 339, 346 (D.D.C. 2018) (denying insurer's request to be identified only as "*an* insurance company [rather than] *Plaintiff*'s insurance company"); *Connolly v. Lotkin*, No. MJG-97-1231, 2000 WL 1508258, at *1–2 (D. Md. Sept. 7, 2000) (denying motion to prohibit disclosure of defendant's "identity as an insurer"). This is because the existence of an uninsured motorist policy is unlikely to sway jurors in a jurisdiction (such as Mississippi) where uninsured coverage is mandatory, and insurers are required to offer

7

such coverage,[3] and because juries and the public "should know who the parties appearing in a trial are and what their relationship is to each other." 334 F. Supp. 3d at 345–46. Thus,

> [w]here, as here, a plaintiff's claim is based on his or her own UIM [underinsured] coverage, the better approach is not to hide that information from the jury but to address head-on any insurance-based bias that may exist. That is, at the insurer's option, the court should instruct jurors that the existence of UIM insurance is not a reason to find in the plaintiff's favor on the question of causation or to increase the quantum of damages.

*Id*. at 346.

The Court believes this is the proper course here. Accordingly, Liberty Mutual's request to appear anonymously in defending the uninsured motorist claim will be denied.

## IV
## Conclusion

For the reasons above, "Defendant's Motion to Bifurcate and Sever, to Stay Extra-Contractual Claims, and to Prohibit Insurance Reference at Car Wreck Trial" [41] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent trial will be bifurcated into separate phases for the uninsured motorist claims and the bad faith claims. The motion is DENIED in all other respects.

**SO ORDERED**, this 16th day of September, 2019.

/s/ MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

---

[3] *See* Miss. Code Ann. § 83-11-101 (requiring automobile insurance to include uninsured motorist policy); Miss. Code Ann. § 63-15-4 (requiring vehicles be covered by auto insurance).